UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In Re: David W. Wagner | | Chapter 7 |
| Debtor | | No. 18-10071 |
| _____ | : | |
| Wesley Holdings Ltd. | : | |
| Plaintiff | : | |
| v. | : | A.P. No. 18- |
| David W. Wagner | : | |
| Defendant | : | |
| _____ | : | |

# COMPLAINT

This complaint is brought for (i) a determination that obligations owed to the Plaintiff by the Debtor-Defendant are non-dischargeable under Bankruptcy Code (11 U.S.C. §101, *et seq.*- - "Code") section § 523 and (ii) a judgment against the Defendant for the amounts owed to the Plaintiff and for its attorneys' fees, costs and expenses incurred in this action.

**Parties**

1.  Plaintiff, Wesley Holdings Ltd. ("Wesley Holdings"), is a limited liability company organized and existing under the laws of the state of Ohio, with its principal place of business at 30100 Chagrin Blvd., Suite 301, Pepper Pike, Ohio 44124.

2.  Defendant, David W. Wagner ("Mr. Wagner"), is the debtor before this Court in the above-captioned case, having filed a chapter 7 petition for relief with this Court on January 17, 2018.

**Jurisdiction**

3. This adversary proceeding is within this Court's jurisdiction pursuant to the provisions of 28 U.S.C. §§157 and 1334 and the provisions of Local Rule LR Gen 109 (Bankruptcy) of the United States District Court of Rhode Island, and is a core proceeding under 28 U.S.C. § 157 (b)(2)(I).

**Statement of Case**

4. This non-dischargeability and related action arises out of fraud and a Ponzi scheme perpetrated by Mr. Wagner and individuals associated with him and with entities he owned and/or otherwise controlled, or with which he was and/or remains affiliated.

5. Wesley Holdings holds a security interest and lien on substantially all assets of 3si Systems, LLC ("3si"), which includes all of the business assets associated with the operating room voice command system technology that make up the "3si Hub" (collectively, the "Collateral"), including without limitation prototype equipment, software, computers and exclusive distribution rights in the United States relating to any products developed and commercialized from the 3si Hub. Other 3si Hub assets—specifically certain patents—appear to be nominally held by 3si Systems' 83% owned subsidiary, Surgical Safety Solutions, LLC ("Surgical Safety").

6. Wesley Holdings made a $1.25 million loan to 3si (the "Loan") based on what are now known to have been fraudulent written financial statements and other misrepresentations made and submitted, or caused to be made and submitted, to Wesley Holdings by Mr. Wagner.

7. The Loan proceeds from Wesley Holdings were to be used for the development of 3si's medical technology business. Instead of using the Loan proceeds for their intended purpose, however, Mr. Wagner almost immediately withdrew most of the Loan proceeds and

used them to repay prior 3si investors who had sued Mr. Wagner or 3si, or were threatening to sue Mr. Wagner or 3si.

8. Approximately one month after the Loan closed, Mr. Wagner caused 3si and its assets, including the Collateral, to be transferred to a newly-created Mr. Wagner-controlled entity, Cliniflow Technologies, LLC ("Cliniflow"), an entity owned directly and/or indirectly by Mr. Wagner.

**Facts**

9. 3si is a medical technology start-up company owned and/or controlled by Mr. Wagner. 3si owns, or was represented to own, 83% of the ownership interest in Surgical Safety. The patents that are part of the 3si Hub appear to be nominally held by Surgical Safety, and 3si has the exclusive right to license products in the United States generated from those patents pursuant to a certain Distributor Agreement dated December 23, 2014, as may be amended from time to time.

10. In early 2016, 3si approached Wesley Holdings about making a loan to 3si. Wesley Holdings requested financial information from 3si.

11. In response, Mr. Wagner prepared and provided and/or caused to be prepared and provided financial statements for 3si's predecessor, which was Downing Health Technologies and its Surgical Safety subsidiary.

12. During the course of considering whether it would make the Loan, Wesley Holdings specifically inquired about and asked whether 3si had any other secured debt and whether 3si was paying or accruing management fees. Wesley Holdings informed 3si that it would not make a loan if 3si had other secured debt, if Mr. Wagner received management fees while 3si was not generating a positive cash flow, or if 3si used the proceeds from the loan for

3

anything other than developing and commercializing the 3si business.

13. In response, Mr. Wagner (directly or indirectly) and 3si made the following representations, among others, to Wesley Holdings (collectively, the "Representations"): (i) 3si and Surgical Safety had no secured debt on their balance sheets; (ii) 3si would not pay Mr. Wagner any management or similar fees until 3si was generating a positive cash flow; and (iii) the Loan proceeds would be used for developing and commercializing 3si's business, including software development, installation of 3si products, and legitimate general operating expenses.

14. In reliance on the Representations, Wesley Holdings made the Loan.

15. On May 13, 2016, 3si and Wesley Holdings entered into a certain Secured Promissory Note and Warrant Purchase Agreement (the "Loan Agreement") that outlined the terms of the transaction between Wesley Holdings and 3si and had various covenants, including covenants about the use of the Loan proceeds, management fees, cash flow of 3si and related matters.

16. In connection with the Loan, 3si also executed and delivered to Wesley Holdings a certain Secured Promissory Note (the "Note") and Security Agreement (the "Security Agreement") pursuant to which 3si granted Wesley Holdings a security interest and lien in the Collateral to secure the performance of the obligations under the Note.

17. 3si did not use the Loan funds to develop and commercialize 3si's business. Instead, almost immediately upon receiving the Loan funds, and in direct contravention of the Representations and Loan Agreement covenants, Mr. Wagner withdrew most of the Loan funds and used them to enrich himself and to pay prior 3si investors who had sued Mr. Wagner or 3si, or were threatening to sue Mr. Wagner or 3si, so he could continue to perpetuate a Ponzi-like fraud scheme that he was carrying out.

18. The fraud scheme worked, in essence, as follows: Mr. Wagner and others recruited employee-investors for 3si based on representations to them that they would be paid certain salary, commission, bonus, expenses and health benefits in exchange for selling products developed by 3si. In recruiting them, Mr. Wagner represented that 3si's products were fully-developed and ready to sell. As a condition to employment, each employee was required to invest a minimum of $250,000 in 3si. However, because 3si had no cash flow, 3si could not pay its employees when it recruited those employees and solicited their investments. Mr. Wagner used the money from new employee-investors to pay earlier-in employee-investors and stopped paying new employee-investors their promised salary and benefits shortly after they started working for 3si. Employees also learned that, contrary to Mr. Wagner's representations, 3si did not have commercialized products they could sell to earn commissions. This scheme and the exposing of it has spawned litigation and arbitration proceedings in at least five states.

19. Upon information and belief, Mr. Wagner was also paying himself management fees while 3si had no legitimate income and no positive cash flow. Mr. Wagner has also been secretly accruing millions of dollars in purported management fees and has asserted in pending litigation in the Southern District of New York that such claims constitute secured debt that would come ahead of Wesley Holding and other creditors. (*See* Wagner Declarations, Dkt. No. 52, S.D.N.Y. Case No. 17-cv-03362.) This was in violation of the Loan documents and directly contrary to the Representations made by Mr. Wagner and 3si Systems.

20. In addition, on June 24, 2016—only a month after closing the Loan, Mr. Wagner transferred 3si and its assets, including the Collateral, to CliniFlow in a series of transactions between Mr. Wagner's various corporate shell entities. CliniFlow was, and may still be, actively soliciting new investors based on the value of the Collateral, soliciting new contracts that can only be fulfilled using the Collateral, and pursuing millions of dollars in public bond debt from the State of

5

Connecticut that will fraudulently interpose a layer of lenders' liens on the Collateral. All of these fraudulent actions are in violation of the Loan documents and cause harm to Wesley Holdings and its interest in the Collateral.

21. On May 5, 2017, Wesley Holdings initiated litigation against Mr. Wagner and his related entities in the United States District Court for the Southern District of New York, entitled *Wesley Holdings LTD vs. 3si Systems, LLC et al.* (17-cv-03362) (the "District Court Case"). The District Court Case is still pending.

22. On September 5, 2017, the court in the District Court Case appointed a receiver over all of the assets of 3si, including the Collateral. On May 9, 2018, the District Court is holding a status conference in the District Court Case with Wesley Holdings, Mr. Wagner, the receiver and others to discuss, among other things, the receiver's proposed sale of the Collateral subject to further motion and court order.

**Count I**
**(Non-Dischargeability of Debt Pursuant to Code § 523(a)(2)(A)**

23. Wesley Holdings restates the allegations contained in paragraphs 1 through 22 of its Complaint as if fully set forth herein.

24. Wesley Holdings is entitled to a determination of non-dischargeability under Code § 523(a)(2)(A) because its claims arise from and otherwise are a direct result of Mr. Wagner's fraud. Mr. Wagner's actions, failings and conduct described above were purposefully done with wrongful intent and were fraudulent, including creating false pretenses, making false representations, and engaging in actual fraud, and thereby causing harm and injury to Wesley Holdings and its property.

25. The acts, failings and conduct of Mr. Wagner, were such as to entitle Wesley Holdings to a determination that its claims against him are non-dischargeable under Code §

6

523(a)(2)(A).

26.     The Plaintiff fully reserves the right to request that this Court grant and accord *res judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the findings, rulings, conclusions and determinations made in the District Court Case and in any other judicial, arbitration or other proceedings involving Mr. Wagner.

**Count II**
**(Non-Dischargeability of Debt Pursuant to Code § 523(a)(2)(B)**

27.     Wesley Holdings restates the allegations contained in paragraphs 1 through 26 of its Complaint as is fully set forth herein.

28.     Mr. Wagner, in order to entice Wesley Holdings to make the Loan, made and used materially false and misleading written statements and written information concerning the financial condition of 3si.

29.     At the time such written statements were presented to Wesley Holdings, Mr. Wagner knew the information was materially false.

30.     Wesley Holdings reasonably relied on such statements and information when determining whether to make the Loan to 3si.

31.     Mr. Wagner was aware at the time such statements and information were made and presented to Wesley Holdings that they were materially false and he authorized such statements and provided such information, nonetheless to deceive Wesley Holdings into making the Loan to 3si.

32.     The actions, failings and conduct of Mr. Wagner were such as to entitle Wesley Holdings to a determination that its claims against him are non-dischargeable under Code § 523(a)(2)(B).

33. The Plaintiff fully reserves the right to request that this Court grant and accord *res judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the findings, rulings, conclusions and determinations made in the District Court Case and in any other judicial, arbitration or other proceedings involving Mr. Wagner.

**Count III**
**(Non-Dischargeability of Debt Pursuant to Code § 523(a)(6)**

34. Wesley Holdings restates the allegations contained in paragraphs 1 through 33 of its Complaint.

35. Mr. Wagner's actions, failings and conduct as to Wesley Holdings were deliberate and intentional, and were intended to, or substantially likely to, cause injury to Wesley Holdings and to its property.

36. Mr. Wagner, by his actions, failings and conduct, willfully and maliciously caused injury to Wesley Holdings and to its property, and Wesley Holdings and its property have suffered injuries as a result of Mr. Wagner's actions, failings, and conduct.

37. The actions, failings and conduct of Mr. Wagner are such as to entitle Wesley Holdings to a determination that its claims against him are non-dischargeable under Code § 523(a)(6).

38. The Plaintiff fully reserves the right to request that this Court grant and accord res judicata and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the findings, rulings, conclusions and determinations made in the District Court Case and in any other judicial, arbitration or other proceedings involving Mr. Wagner.

## Count IV
### (Non-Dischargeability of Debt Pursuant to Code § 523(a)(4))

39. Wesley Holdings restates the allegations contained in paragraphs 1 through 38 of its Complaint.

40. Mr. Wagner owed a fiduciary duty to Wesley Holdings that included the exercise of utmost care, loyalty and good faith including as to the Collateral.

41. At all times, Mr. Wagner had complete control over and ownership of 3si and the Collateral, and therefore, was acting as a fiduciary with respect to Wesley Holdings as a creditor of 3si and in respect to the Collateral and Wesley Holdings' interests therein.

42. Mr. Wagner breached those duties owed to Wesley Holdings by, *inter alia*, wrongfully transferring and diverting the Collateral and by diverting 3si's cash and other assets wrongfully and for improper purposes.

43. The actions, failings and conduct of Mr. Wagner are such as to entitle Wesley Holdings to a determination that its claims against him are non-dischargeable under Code § 523(a)(4).

44. The Plaintiff fully reserves the right to request that this Court grant and accord *res judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the findings, rulings, conclusions and determinations made in the District Court Case and in any other judicial, arbitration or other proceedings involving Mr. Wagner.

## Count V
### Judgment for Amount Owed

45. Wesley Holdings restates the allegations contained in paragraphs 1 through 44 of its Complaint as is fully set forth herein.

46. Wesley Holdings request that this Court make a determination of the amounts owed to it by Mr. Wagner.

47. The Plaintiff fully reserves the right to request that this Court grant and accord *res judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the findings, rulings, conclusions and determinations made in the District Court Case and in any other judicial, arbitration or other proceedings involving Mr. Wagner.

WHEREFORE, Wesley Holdings prays that the Court determine, declare and enter judgment for Wesley Holdings under Code §523 as follows:

A. Declare that Wesley Holdings' claims against Mr. Wagner as set forth herein are non-dischargeable under Code §523(a)(6) and (a)(4);

B. Declare that Wesley Holdings' claims against Mr. Wagner as outlined herein are non-dischargeable under Code §523(a)(2)(A) and (B);

C. Make a determination of the amounts owed to Wesley Holdings by Mr. Wagner;

D. Declare that Mr. Wagner should pay Wesley Holdings' costs and attorneys' fees incurred in this adversary proceeding; and

E. Grant such other and further relief as the Court deems just.

        Wesley Holdings Ltd

        By its Attorneys,

April 22, 2018        */s/ Matthew J. McGowan and Elizabeth A. Lonardo*
        Matthew J. McGowan, Esquire (Bar No. 2770)
        Elizabeth A. Lonardo, Esquire (Bar No. #7714)
        Salter McGowan Sylvia & Leonard, Inc.
        321 South Main Street, Suite 301
        Providence, RI 02903
        401.274.0300
        mmcgowan@smsllaw.com
        elonardo@smsllaw.com

F:\contents\Wagner\Bankruptcy\Wesley\Non-Disch-Complaint Final.docx