**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

In Re: David W. Wagner                                     Chapter 7
                                                                            No. 18-10071
                 Debtor

**MULTIPLE CREDITORS' MEMORANDUM OF LAW ON DEBTOR'S BLANKET OBJECTIONS TO THEIR CLAIMS**

David Hilderbrand, David Kiderman, Ryan Detzel, Mark Miller, John Hart, Andrew Hatch, Stephen Forden, Chad Decker, Timothy Caver, Barry Keenan, William Koch, Jan Mosholt, Ponce Kenton, Gregory Siuciak, Vince Schuessler, and Melissa Fitzpatrick (the "Creditors" or singly, a "Creditor") hereby respectfully present this Memorandum of Law as to the Debtor's blanket objections to their proofs of claim.

**Summary of Argument**

A.      The Debtor (sometimes, "Mr. Wagner" or "Wagner") is attempting to make a mockery of the claims allowance and adjudication process in this case through his bad-faith, dishonest, and vexatious filing of blanket, across-the-board objections to some 50 proofs of claim. He filed rote objections to each of those 50 claims despite earlier having listed each of them as not being "disputed" in his sworn-to bankruptcy schedules. And he objected to each of the Creditors' and others' proofs of claim due to an asserted alleged lack of documentation despite that:

        (i) substantial and detailed documentation *was* filed with *each* of the Creditors'
        proofs of claim in support thereof (after first having been gathered and assembled at
        considerable effort by the Creditors and their undersigned and other counsel), including
        documentation consisting of a lengthy and detailed arbitrator's decision, ruling, and

award that, as to the majority of such claims, exhaustively, overwhelmingly, and dispositively established the Debtor's pervasive fraud and other wrongful conduct and his personal liability for such claims—and, importantly, of which he and his counsel were *fully* aware *prior* to the time the blanket objections were filed;

(ii) even notwithstanding that, the Debtor, who can accurately and without hyperbole be described as the "ring-leader" of an extensive fraudulent enterprise—as the attached arbitration decisions and rulings clearly and conclusively establish—was intimately familiar with the documentation supporting each such claim arising out of that enterprise that he created and operated, and through his blanket objections has pretextually concocted a feigned need for documentation[1]; and

(iii) one can speculate as to whether the Debtor or his counsel ever actually reviewed the Creditors' proofs of claim and the attachments thereto before filing his blanket objections on the basis of lack of documentation, or did and was simply indifferent about what was found, but there is *no* speculation that, before he filed his blanket objections, the Debtor never requested that any Creditor provide to him additional documentation.

---

[1] It should not be lost in the factual and legal presentation here that, as a threshold matter, the Debtor has failed to show a valid and legitimate purpose for his objecting to claims in the first instance in a chapter 7 case in which there is no money. A debtor may wish to file valid and good faith objections at a point in a case where there is a surplus with creditors first being paid in full, 100% plus interest, as their may then be money available to the debtor. But this is a case with claims totaling in the millions of dollars and with no cash on hand, which is why labelling the blanket objections as "vexatious" is accurate and entirely justified—if not understated— particularly when one considers the wasteful expenditure of time, effort, money and resources of the Creditors, other creditors, their counsel, and the Court in having to respond to the Debtor's bad faith blanket objections. Note that a chapter 7 trustee is the one who generally would and should be filing objections to claim, but there only "if a purpose would be served." Bankruptcy Code § 704(a)(5) (noting "Duties of a Trustee").

2

B. For these reasons, the Court should find and determine that the blanket objections have been filed in bad faith and with such determined ignorance of or indifference to facts, or both, and are otherwise, in all events, so insufficient, that, under applicable law, the Debtor has not through them rebutted or overcome the prima facie validity of the Creditors' proofs of claim, and thus that the burden at this point is and remains on the Debtor to produce evidence for and to prove that those claims must be disallowed, in the absence of which, without more, such claims must be found to be allowed.

**Background**

1. The Debtor filed his chapter 7 petition with this Court on January 17, 2018, and his bankruptcy schedules and statement of financial affairs two weeks later on January 31, 2018. He initially proceeded pro se in this case but has been represented by counsel since at least May 2018.

2. Prior to the chapter 7 filing, nine (9) of the Creditors, in 2017, had commenced an arbitration action with the American Arbitration Association Commercial Arbitration Tribunal in New York before Arbitrator Stephen F. Ruffino, Case No. 01-17-0001-3167: Timothy Caver, Chad Decker, Barry Keenan, William Koch, Jan Mosholt, Ponce Kenton, Gregory Siuciak, Vince Schuessler and Melissa Fitzpatrick (the "3167 Arbitration"). Three (3) of the Creditors had earlier, in 2016, commenced similar arbitration proceedings in arbitration Case No. 01-16-0005-6312: John Hart, Stephen Forden, and Andrew Hatch (the "6312 Arbitration"). And four (4) of the Creditors had brought suit in the United States District Court for the Southern District of New York, commencing case No. 16-cv-04040: David Hilderbrand, David Kiderman, Mark Miller, and Ryan Detzel (the "District Court Action").

4. The arbitration proceedings had been brought against the Debtor and his affiliated and related entities and individuals, including Downing Investment Partners, LP, Downing Partners, LLC, Downing Acquisition Partners, LLC, Hanover Square Capital Partners, LP, Cliniflow Technologies, LLC, Michael H. Shaut, Richard L. Buckingham, Marc M. Lawrence, Brett Giffin, Cornelius E. Colley, and the Wagner Family Educational Trust of 1/20/2004 (collectively, as to both the 3167 Arbitration and the 6312 Arbitration, the "Arbitration Respondents"; and with the Creditors in both such arbitration proceedings being here the "Arbitration Plaintiffs") for fraud, fraud in the inducement, misrepresentations and other claims, alleging that the Debtor and others of the Arbitrator Defendants had defrauded such arbitration plaintiffs out of between $150,000 and $250,000 each. Arbitration of disputes and claims was provided for through the private placement memoranda (as to investments and securities) ("PPM's") and employment agreements that had been provided to the Creditors.

5. The 6312 Arbitration had concluded before the chapter 7 filing through an extensive decision and award rendered by the arbitrator in the proceeding on November 21, 2017 by Arbitrator Carol A. Mager, through which, among other rulings, she found Mr. Wagner and the other Arbitration Respondents there liable to the Arbitration Plaintiffs in that matter for over $1.1 million in actual and punitive damages for his fraudulent conduct, which is described in detail in her decision and award, attached as <u>Exhibit A</u> hereto. (the "6312 Arbitration Award")

6. In the 3167 Arbitration, the Arbitrator after extensive hearings on December 6, 7 and 8, 2017, issued a comprehensive 49-page decision and award (containing 110 footnotes) on March 12, 2018 in favor of the Arbitration Plaintiffs there and against the Arbitration Respondents "for fraud, including fraud in the inducement for their misrepresentations,

fraudulent statements, and other fraudulent conduct." Exhibit B—the "March 2018 Award." That Award contains numerous detailed findings of fact and conclusions of law, and a 16-paragraph conclusion which, inter alia, assessed liability among the Arbitration Respondents for $3,029,488.77, punitive damages of $6,058,967.45 (twice the amount for fraud) and $1,010,031.55 for attorneys' fees. Further state law-specific awards in excess of $1.7 million were also made by the Arbitrator in his March 2018 Award. The Debtor was sent a copy of the March 2018 Award by the American Arbitration Association, and otherwise received it shortly after it was issued.

7. Seeing what had happened in and the result of the 6312 Arbitration, and no doubt seeing "the writing on the wall" in the 3167 Arbitration after several days of hearings in that the month before, Mr. Wagner filed his chapter 7 petition the following month, in January 2018. Upon being informed of the Debtor's bankruptcy filing, the Arbitrator there excluded the Debtor from any ruling and award, but included in that Award this statement: "The absence of his [Mr. Wagner—the Debtor's] name from these liability [for fraud] determinations is not intended as an exoneration but only a deferral pending resolution of the bankruptcy." Exhibit B; at 29, ¶ 94. The Arbitrator also stated, "… but for the bankruptcy filings, Wagner would have been found jointly and severally liability under this [fraud] claim and all others…" Id.

8. On August 30, 2018, the Arbitration Plaintiffs filed a motion for relief from the automatic stay with this Court for the limited purpose of allowing the Arbitrator to make his final findings of fact and conclusions of law in the 3167 Arbitration against or otherwise in respect to the Debtor and also to issue and enter his award as it relates to the Debtor.

9. A copy of that motion, with the March 2018 Award attached as an exhibit thereto

(Doc. no. 84), was served on the Debtor and his counsel.  After hearing and considering that motion, and the objection to it filed by the Debtor's counsel (Doc. no. 92), the Court, on October 23, 2018, entered an order granting relief from the automatic stay for such purpose.  (Doc. no. 101)

      10.     The Court's relief from stay order provided, inter alia, that:  (i) Arbitrator Stephen F. Ruffino could resume the arbitration proceeding and render his finding of facts, conclusions of law, and decision and award therein as to the Debtor as if Mr. Wagner's bankruptcy filing had not intervened in that arbitration proceeding; (ii) the Arbitration Plaintiffs could file such papers and otherwise take all such steps and actions necessary to have the Arbitrator's final decision and award, and, if required, such other rulings, findings and conclusions of the Arbitrator, including in respect to Mr. Wagner, confirmed by an appropriate court; and (iii), for clarification and confirmation, nothing in the Court's order should be read or construed to prevent the Debtor from filing any appropriate papers in the arbitration or in any court proceeding for the confirmation of the Arbitrator's rulings, and/or final decision and award.

      11.     Thereafter, the arbitration resumed and, in February 2019, the Arbitrator issued a second decision and award, his 48-page "Award of the Arbitrator Regarding David W. Wagner" (<u>Exhibit C</u>—the "Final Award.").  Like the March 2018 Award by him, the Final Award is also comprehensive and detailed, with 109 footnotes.  Its pertinent provisions are summarized later in this memorandum.

      12.     The complaint in the District Court Action is attached as <u>Exhibit D</u> hereto, and similarly lays out in detail the fraudulent conduct of Mr. Wagner.  It was attached to four of the proofs of claim.  The Creditors' arbitration and federal district court proceedings with the Debtor

center around the Debtor's fraudulent conduct in regard to certain investments made by the Creditors into companies owned and/or controlled by the Debtor described by the arbitrator in the March 2018 Award as "a nationwide Ponzi scheme with an employment twist."

13.  Prior to the filing of the blanket objections, the Creditors filed a comprehensive non-dischargeability complaint against the Debtor under Bankruptcy Code (11 U.S.C. § 101 *et seq*.) § 523, based primarily on those arbitration and federal district court actions and the allegations and findings therein, specifically seeking a non-dischargeability determination under Bankruptcy Code §§ 523(a)(6), 523(a)(2)(A), 523(a)(4) and 523(a)(2)(B).  They also filed a complaint objecting to the Debtor's discharge under Bankruptcy Code § 727.

### *The Schedules and Claims*

14.  Each of the Creditors' claims were listed by the Debtor in his sworn-to schedules accompanying his petition as "contingent." None was scheduled or otherwise listed as being "disputed."

15.  While having filed the petition pro se, the Debtor has been represented by counsel—sometimes two attorneys—since at least May 25, 2018, when an attorney first filed a formal entry of appearance for Mr. Wagner.  The Debtor has not amended such schedules, and thus, from the inception of this case to the present, and after employment of two separate counsel, each of the Creditors' claims continues to appear in the schedules without being listed or designated as "disputed."

16.  Each of the Creditors filed proofs of claim in this case.  *Each* proof of claim has written documentation supporting the claim attached to it.  Such documentation consists of a copy of the 23-page November 2017 6312 Arbitration Award and its detailed findings, or the 48-

page March 2018 Award (if the Creditor was also an Arbitration Plaintiff) or a copy of the Second Amended Complaint filed in the District Court Action. Where the attached documentation supporting the claim is the March 2018 Award there is also a breakdown of the awarded amounts per Creditor provided as a further attachment, with additional detail, such as the following which is, as an example, attached to the proof of claim of Chad Decker:

> The Proof of Claim amount of $824,273.04 is broken down as follows:
> - $218,376.29 awarded to Chad Decker for his claim in Arbitration 01-17-0001-3167.
> - $605,896.75 is $1/10^{th}$ of the punitive damage award entered by the Arbitrator in Arbitration 01-17-0001-3167. There were ten plaintiffs involved in the Arbitration with the Arbitrator entering punitive damages of $6,058,967.54.

17. On January 10, 2019, the Debtor, through counsel, filed what can appropriately be considered to be blanket, across-the-board objections to 50 claims, including the claims of the Creditors (doc. No. 176-225). The Trustee filed a response to the blanket objections on January 22, 2019.

18. In her response, the Trustee noted that the Debtor fails to state in his blanket objections that he made any effort whatsoever to communicate with any of the Creditors to request documentation from them before filing his objections.

19. In response to the Trustee's filing, the Court, on February 8, 2019, directed the Debtor to file a memorandum of law addressing whether the Debtor's scheduling of claims as contingent or unliquidated, but not as disputed, should be deemed an admission by the Debtor of his personal liability for the claims and the Debtor should be precluded from disputing such liability through the blanket objections. The Court, through that order, also permitted the Trustee to file a reply memorandum of law and any creditors affected by the blanket objections to, if they

choose, file a memorandum of law on the same legal issue. The Court thereafter extended the time periods for such filings.

20. The Debtor filed a legal memorandum, through counsel, in which he failed to address in any straight-forward or direct manner the specific legal point identified in the Court's February 8th order. The Debtor's memorandum of law simply does not address the specific issue of whether the Debtor's scheduling of claims as contingent or unliquidated, but not as disputed, should be deemed an admission by the Debtor of his personal liability for the claims; and whether the Debtor should thus be precluded from disputing such liability through the blanket objections.

### *Bad Faith Objections—No Shifting of Burden*

21. The blanket objections should be stricken as being filed in bad faith, including in violation of Bankruptcy Rule 9011(b). *See In Re MacFarland* 462 B.R. 857 (Bankr. S.D. Fla. 2011).

22. If and to the extent that the Court does not grant a motion to strike the blanket objections, the Creditors request that the Court enter an order finding that the blanket objections, having been filed in bad faith and being otherwise insufficient, have not defeated the prima facie validity that should be accorded the Creditors' proofs of claim.

23. The well-established presumption and burden of production and of proof construct in connection with considering proofs of claim and objections to them is that a proof of claim is entitled to prima facie validity, but that is overcome in the face of a valid and legitimate objection. The Creditors ask this court to determine that the blanket objections, to the extent that they survive a motion to strike, do not constitute bona fide, good faith, valid or legitimate

objections, and thus there has been no overcoming of the prima facie validity of the proofs of claim, and thus, the burden of production and proof is and must remain with the Debtor to overcome and defeat the validity of each claim, and to do so by a preponderance of the evidence.

24. It is universally acknowledged that the rules concerning the burden of proof, production, and the shifting of the same in respect to claims and claim objections is as follows:

   a. A properly filed and executed proof of claim is prima facie evidence of its validity;

   b. The burden is on the objecting party to produce evidence in support of the objection of a quality sufficient to rebut the claimant's prima facie case;

   c. The objecting party has the burden of establishing the grounds for disallowance of the proof of claim; and

   d. If and upon the objecting party producing rebuttal evidence of such quality and sufficiency, the burden shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence.

*VBF LLC v. Campbell Soup Company* 482 F.3d 624 (3rd Cir. 2007), *Matter of Fidelity Holding Co., ltd.* 837 F.2d 696, 698 (5th Cir. 1998); and *In Re Admetric Biochem, Inc.,* 284 B.R. 1 (Bankr. D. Mass. 2002) (collecting cases). *See also In Re Allegheny Intern, Inc.,* 954 F.2d 167, 173-74 (3rd Cir. 1992) (holding that the objector to a proof of claim must produce evidence equal in force to the prima facie case, otherwise the burden never reverts to the claimant to prove the validity of the claim, but instead the claim remains as having been prima facie established).

25. "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir.1992); *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)). Specifically, a proof of claim in a bankruptcy proceeding "cannot be defeated by mere

formal objection and the sworn proof is to be treated as some evidence even when it is denied." *In re Sabre Shipping Corp.*, 299 F. Supp. 97, 99 (S.D.N.Y. 1969). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the validity and the amount of the claim." 4 *Collier on Bankruptcy* 502.03[3][f] (rev. ed. 2007).

26. The specific rules that came into effect through amendments to the Bankruptcy Rules in 2011 and 2012 that require additional information to accompany a proof of claim do not apply here. Those rule changes primarily added requirements of additional information in regard to request for interest, fees, expenses and other charges, where there is a need for an itemization of those items, where a security interest is claimed in the debtor's property, or where the debt at issue is one based on an open-end or revolving consumer credit agreement. None of these specific requirements apply here. And further, while there is a general requirement that when a claim is based on a writing, a copy of the writing is to be filed with the proof of claim, even where it has not been, the court has discretion as to what the response should be. Rule 3001(c)(2)(D). It has been held that such rule does not provide authority for the court to deny a creditor's claim based solely on its failure to attach documentation to a proof of claim. *In Re Reynolds*, 470 B.R. 138, 145 (Bankr. D. Colo. 2012).

27. As to the level of written documentation required to support a filed proof of claim, the court in *In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D. N.Y. 2010), stated that:

> Furthermore, a creditor could establish a prima facie case through the use of summaries so long as the creditor makes "the underlying documents available for examination at a reasonable place and time." Id. (citing In re Cluff, 313 B.R. 323, 335–36 (Bankr.D.Utah 2004); Fed.R.Evid. 1006 ("The contents of voluminous writings ... may be presented in the form of a ... summary.... The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place....")).

The attachments to the Creditors' proofs of claim more than satisfy such requirements.

28. The court in *Minbatiwalla* also addressed the situation here, where claims were never listed as "disputed" but then the debtor filed an objection to that non-disputed claim, noting that:

> Some courts find that where the debtor schedules the claim as undisputed, but then objects to the claim, the court will take judicial notice of the debtor's schedules, and the burden of proof shifts to the debtor to refute the claim even if the claim otherwise lacks *prima facie* validity for lack of sufficient documentation. *See In re Jorczak,* 314 B.R. 474, 483 n. 11 (Bankr.D.Conn.2004) ("[W]hen a 'proof of claim' [against an estate surplus] has been filed in a chapter 7 case and the chapter 7 debtor objects to the same but scheduled the relevant claim as undisputed, the burden is on the debtor to offer some adequate level of explanation as to why his scheduling of that claim as undisputed was incorrect.") (credit card claim)

29. Importantly, the court in *Minbatiwalla* noted that prior to objecting to the creditor's (J.P. Morgan Chase Bank, N.A. ("Chase")) proof of claim at issue there—on the basis that sufficient documentation was not attached to it—the debtor, through counsel, had first made a detailed request of documentation from the creditor, Chase, which was not produced:

> On October 22, 2009, Debtor's counsel requested documentation from Chase supporting Claim # 2. In the letter, counsel indicated that Chase only attached "Exhibit A" to the claim, showing a summary, arrearage and post-petition chart. In addition, Debtor's counsel requested that (a) Chase forward any missing pages from the Claim, and (b) advise which entity currently holds the note and mortgage and whether or not there have been any assignments. According to the Debtor, Chase has not responded to the request.

30. The court in *Minbatiwalla* cited approvingly to the decision in *In re Jorczak* where the court held that where a chapter 7 debtor objects to a claim but had earlier scheduled that claim as undisputed, the burden never shifts and remains on the debtor to offer some adequate level of explanation as to why his scheduling of that claim as undisputed was incorrect. *In re Jorczak*, 314 B.R. 474, 483 n.11 (Bankr. D. Conn. 2004). This is because statements in bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor,

are eligible for treatment as judicial admissions. *In re Rolland*, 317 B.R. 402, 421-422 (Bankr. C.D.Cal. 2004).

### *Summary of Final Award Findings and Rulings*

31. The Debtor has made a judicial admission that the claims of the Creditors are not disputed, and he should be found to be bound by that—particularly on these facts, and under these circumstances. But beyond this, the Debtor's blanket objections must be found to have been filed in bad faith as there was overwhelming support through the attachments to those proofs of claim for the Debtor's liability, as the Debtor was very well aware when he filed his blanket objections, as evident from the earlier arbitration proceedings, decisions and awards, as evident in the following findings and rulings made in the Final Award (Exhibit C):

(i) Wagner was the alter ego of the various legal entities listed as respondents [those being the entity respondents in the Arbitration, and including Downing Investment Partners, LP, Downing Partners, LLC, Downing Acquisition Partners, LLC, Hanover Square Capital Partners, LP, Cliniflow Technologies, LLC, and the Wagner Family Educational Trust of 1/20/2004]; at p. 2.

(ii) Wagner "fully directed and controlled all their [identified entities'] actions, redirected funds, and raided such funds for his personal benefit, without regard to any legal requirements that applied to the management of those entities." At pp. 2-3.

(iii) The Creditors were recruited to be employees of one or more of these controlled entities, and as part of their employment were required to invest into one or more of such entities. As part of the process of recruiting the Creditors, they were promised salaries, expense reimbursement, bonuses and healthcare stipends and, in addition, were required to invest between $150,000 and $250,000 as specified in private placement memoranda. At p. 3.

(iv) The Creditors' respective employments agreements and such PPM's contain arbitration provisions and Mr. Wagner [the Debtor] participate dint he prior arbitration proceedings, both directly and indirectly. At p. 3.

(v) "Claimants Decker, Carver, Keenan, Kosh, Mosholt, Kenton, Siuciak, Schuessler and Fitzpatrick each testified credibly as to the events of their respective recruitments, and the conduct of the arbitration respondents; and they have fully satisfied their burden of proof with respect to each claim in this arbitration." At p. 3.

(vi) "The evidence is overwhelming that Respondents' entire employment process was a scheme, directed and controlled by Wagner [the Debtor], intended solely to entice new employee-investors, knowing their money would be redirected to unstated purposes that would not benefit the company into which the money was invested." At p. 3.

(vii) Prior to the Arbitration Plaintiffs becoming employed by the Respondent Entities, the Arbitration Respondents had failed to pay their employees' wages, expenses and healthcare costs beginning in at least October 2014. Wager [and others] on behalf of [certain Respondent Entities], omitted to tell the arbitration plaintiffs that they were not paying their current employees' salaries, expenses or healthcare at the time of their recruitment. At the time of their recruitment, the Arbitration Respondents knew or should have known that they could not afford to pay the arbitration plaintiffs, their agreed-to salaries, expenses, healthcare and bonuses. At p. 3.

(viii) Prior to the Arbitration Plaintiffs becoming employed, the Arbitration Respondents had entered into numerous promissory notes with former employees related ma unpaid back wages, salary and expenses and return of investments and the Arbitration Respondents had defaulted on each promissory note. Also prior to their employment, the Arbitration Respondents had been sued or were being sued by at least seven former employees, with such suits dating back to March 2015, alleging that they had all invested into the Respondent Entities with a promise of salary but that they were never paid their salary or return of their investments. At p. 5.

(ix) Before being employed by the Entity Respondents, a particular trumpeted product had not been commercialized, nor did it have what were represented to be numerous "beta sites", and none had been used in any clinical setting and there was no promised so-called vox space mediData product to sell. At p. 7.

(x) Wagner [the Debtor] used entity funds for personal expenses and transferred funds to his wife who had no involvement in the entities, and was paid $792,042 in compensation from at least one entity while it reported a loss of approximately $5,250,000 in 2014. In addition, Mr. Wagner [the Debtor] liquidated partnership units owned by family trusts, with the result being $450,000 leaving one of the entities and going to the debtor and his Wagner Family Trust. At p. 7.

(xi) The Arbitration Respondents relied on recruiting new employees, and their mandatory investments into the respondent entities, in order to fund their operations. At p. 7.

(xii) Certain individuals "acted with the knowledge and at the direction of Wagner [the Debtor] and, further, … Wagner was aware of all of the information that [such individual] had in respect to Respondents' operations." At p. 8.

(xiii) Representations in the PPM's regarding pending litigation were false. At p. 9.

14

  (xiv) The District Court litigation identified above, which commenced on May 31, 2016, by a group of former employees had not been disclosed when additional employees and investors were being recruited, with such false statements including those that the respondent entities were "not a party to any material litigation, nor to the knowledge of Management is any litigation threatened against the Company [Respondent Entity] with may materially affect the business of the company or its assets." At p. 11.

  (xv) The Debtor, as is shown through documentary evidence, including emails, directed an employee who was on board but had already failed to have been paid as promised, that he "will need to close five (5) of the open positions by June 30, 2016 in order to get that appointment [referring to that employee supposedly being appointed as president and CEO of an entity] and "close another five (5) open positions by August 31, 2016 in order to keep that position. These are all recruit-invest positions- at 250k each." At p. 13.

           Respectfully submitted

           The Creditors
           By their Attorneys,


May 1, 2019          /s/ *Matthew J. McGowan*
           Matthew J. McGowan, Esquire (2770)
           Salter McGowan Sylvia & Leonard, Inc.
           56 Exchange Terrace—Suite 500
           Providence, RI  02903
           (401) 274-0300
           mmcgowan@smsllaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

In Re:  David W. Wagner                                           Chapter 7
                                                                  No. 18-10071
        Debtor

**CERTIFICATE OF SERVICE**

    I hereby certify that I have this date electronically filed the **MULTIPLE CREDITORS' MEMORANDUM OF LAW ON DEBTOR'S BLANKET OBJECTIONS TO THEIR CLAIMS** in this case with the Clerk of this Court using the CM/ECF System.  The following are CM/ECF System participants in this case eligible to receive notice of the filing of such paper(s) electronically:

    Stacy B. Ferrara, Esq.                  sferrara@ndgrb.com

    Charles A. Pisaturo, Jr., Esq.          Charlie@pisaturolaw.com

    Gary L. Donahue, Esq.                   ustpregion01.pr.ecf@usdoj.gov

    Russell D. Raskin, Esq.                 mail@raskinberman.com

    I further hereby certify that I have on July 17, 2018 served a copy of the above-referenced paper(s) on the following non CM/ECF participants by first class mail, postage prepaid, at the addresses noted below:

David W. Wagner
55 Downing Street
E. Greenwich, RI 02818

May 1, 2019                                              */s/ Brittany Siter*

F:\contents\Wagner\Bankruptcy\Hilderbrand Et Al\POCs\Response to Debtor's Blanket Obj to Claims\Hilberbrandt and Other Multiple Claimants Response to Blanket Obj to Claims.doc